# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| United States of America for the Use and Benefit of Coastal Roofing Company, Inc., | ) ) ) ) | |
| Plaintiff, | ) ) | C.A. No.: 2:07-3008-PMD |
| v. | ) ) | |
| P. Browne & Associates, Inc., Paul R. Browne, Fred Anthony, The Broadband Companies, and Hartford Fire Insurance Company, | ) ) ) ) ) | **ORDER** |
| Defendants. | ) ) | |

This matter is before the court on Plaintiff Coastal Roofing Company, Inc.'s motion to vacate an arbitrator's award and Defendants' motion to lift the court's stay and confirm the arbitrator's award. For the reasons set forth herein, Plaintiff's motion to vacate is denied, and the court grants Defendants' motion and confirms the arbitrator's award.

## BACKGROUND

Plaintiff Coastal Roofing Company, Inc. ("Coastal") is in the business of installing and repairing roofs. In the summer of 2006, Coastal President Richard Ryan ("Ryan") began negotiating with representatives of a company called Broadband Construction, LLC ("Broadband"). Defendants Paul Browne & Associates and Paul Browne (collectively, "Browne") had been given a contract to perform roofing work at the United States Navy's SPAWAR facility at the Charleston Weapons Station. Browne had then subcontracted this work to Broadband. Broadband, in turn, was in negotiations to subcontract the work to Coastal. Representing Broadband was Donald T. Reynolds ("Reynolds"), who held himself out to be

President of Broadband. On August 11, 2006, the parties entered into a contract, which contained the terms under which Coastal would perform the actual roofing work in question.

On February 21, 2007, Broadband's attorney sent a letter to Coastal informing them that their employment had been terminated due to insufficient progress on the job. At this point, Reynolds, again holding himself out to be President of Broadband, entered into a separate contract with another subcontractor, Glasgow Roofing Company, Inc., to complete the roofing work for which Coastal had been hired. In April 2007, Coastal notified Broadband's counsel that it would demand arbitration for breach of contract over its termination. While conducting research for the arbitration, Coastal discovered that Broadband Construction, LLC, did not in fact exist as a limited liability corporation. After bringing this issue up to Broadband's attorney, the attorney responded that the actual contracting party had been Broadband Construction Services, LLC. Upon conducting more research, however, Coastal discovered that Broadband Construction Services, LLC had actually been dissolved with the Secretary of State on December 31, 2006. Despite this, Reynolds continued to do business as Broadband, particularly with Glasgow, well after this date.

On June 26, 2007, the parties met for mediation of this dispute, but were unable to resolve their differences. The mediator suggested that the two parties document their differences, submit them to him, and return for mediation on September 12. On September 5, Coastal sent a letter to Broadband's attorney informing him that Coastal would not be attending any further mediation. Also on September 5, Coastal filed the present action against Defendants in this court. In its Complaint, Plaintiff alleges five separate causes of action: (1) a violation of the Miller Act, which requires contractors on federal construction contracts to obtain a surety bond; (2) a legal claim for quantum meruit, or the legal value of services rendered; (3) fraud; (4) civil conspiracy;

and (5) a request for a declaratory judgment that no contract was formed between Plaintiff and Broadband or any Defendants. Plaintiff sought compensatory damages in the amount of services rendered for its roofing services, punitive damages, attorneys' fees, and a declaration that both the surety bond obtained by Plaintiff and the agreement between Coastal and Broadband are null and void. On December 5, 2007, this court stayed the litigation and ordered the parties to arbitration pursuant to an arbitration provision in their contract, and prior to arbitrating the claim, Mr. Anthony and Broadband asserted the following counterclaims against Plaintiff: breach of contract, breach of express and implied warranties, negligence, and indemnity. The arbitrator issued his award on June 29, 2009, in which he found in favor of the Broadband Companies, LLC, as successor to Broadband Construction Services, LLC, in the total amount of $742,098.60, and on July 27, 2009, he confirmed the award after the parties filed motions to modify it. Besides itemizing the damages awarded, the arbitrator did not provide the reasoning for his award. Now, Fred Anthony and Broadband have filed with the court a motion to lift the court's stay and confirm the arbitration award, while Coastal moved the court to vacate it.

## ANALYSIS

It is well settled that a court's review of an arbitration award "is among the narrowest known to the law." *United States Postal Service v. Am. Postal Workers Union, AFL-CIO*, 204 F.3d 523, 527 (4th Cir. 2000) (internal quotation marks omitted). "A court sits to 'determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it.'" *Id.* (quoting *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996)). "As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paper-*

*Workers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987). The Fourth Circuit has emphasized the limited scope of judicial review because "[a] policy favoring arbitration would mean little, of course, if arbitration were merely the prologue to prolonged litigation. . . . Opening up arbitral awards to myriad legal challenges would eventually reduce arbitral proceedings to the status of preliminary hearings." *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 146 (4th Cir. 1994). Therefore, "[a] confirmation proceeding under 9 U.S.C. § 9 is intended to be summary: confirmation can only be denied if an award has been corrected, vacated, or modified in accordance with the Federal Arbitration Act." *Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir. 1986); see also *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987) ("Absent a statutory basis for modification or vacatur, the district court's task [is] to confirm the arbitrator's final award as mandated by section 9 of the Act."). It is the plaintiff's burden to prove that the unfavorable portions of the award should be vacated, as provided in sections 10 and 11 of the Federal Arbitration Act. *O.R. Securities, Inc. v. Professional Planning Associates, Inc.*, 857 F.2d 742, 748 (11th Cir. 1988).

I. **Coastal's Motion to Vacate the Arbitrator's Award**

Plaintiff asks the court to vacate the arbitrator's award pursuant to 9 U.S.C. § 10(a)(4), which permits a district court to vacate an arbitrator's award "[w]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." First, Plaintiff asks the court to vacate the arbitrator's award because the arbitrator failed to provide the reasons for his findings as requested by the parties and allegedly required by the applicable arbitration rules. Furthermore, plaintiff argues that the court vacate the award because the arbitrator acted in manifest disregard of the South Carolina law regarding mergers and successors in interest by finding that The Broadband

4

Companies, LLC was a legal successor in interest to the terminated Broadband Construction Services, LLC. Lastly, Plaintiff argues that the contract which contained the arbitration agreement was procured by fraud and, therefore, is unenforceable. The court addresses these arguments in turn.

   a) **<u>Reasoned Award</u>**

Plaintiff first asks the court to vacate the arbitrator's award on the ground that the arbitrator failed to provide a reasoned award as requested by the parties pursuant to the Construction Industry Arbitration Rules of the American Arbitration Association. In addressing the merits of the parties' dispute, the arbitrator's award stated the following:

> The Broadband Companies, successor in interest to Broadband Construction Services, LLC, shall recover of Coastal Roofing Company, Inc., the total sum of $719, 203.33, derived as follows:
>
> | | |
> |---|---|
> | Damages | $436,545.13 |
> | Pre Award Interest at 8.75% | $64,465.20 |
> | Attorney fees and expenses | $218,193.00 |

(*Id.* Ex. 4.) With respect to the form of an arbitrator's award, Rule 43 of the prior Construction Industry Arbitration Rules of the American Arbitration Association, applicable to the parties in this case, stated:

> R-43. Form of Award
>
> (a) Any award shall be in writing and signed by a majority of the arbitrators. It shall be executed in the manner required by law.
>
> (b) The arbitrator shall provide a concise, written breakdown of the award. If requested in writing by all parties prior to the appointment of the arbitrator, or if the arbitrator believes it is appropriate to do so, the arbitrator shall provide a written explanation of the award.

Plaintiff contends that the parties did request a reasoned award from the arbitrator, and to support this argument, Plaintiff provided a copy of the original arbitrator's Report of Preliminary Hearing, Scheduling Order, and Procedural Directive No. 2, which stated, "A reasoned award

5

was requested." (*Id.* Ex. 2 ¶ 13.) Plaintiff also provided the court with a transcript of the arbitration hearing, in which Plaintiff contends the parties repeated their request for a reasoned award. The pertinent portions of the transcript are as follows:

> **MR. BUNDY** [counsel for Coastal]: I would like a reasoned award. I don't usually like it. Usually what I like is just a number, but the reason I want a reasoned award is because we've got downstream subs and material suppliers that apparently have been—even just listening to what you have to say, they said one thing on the front end, they told you there was a certificate, now they come back later and say there was no certificate. I've got a written document from them which says there is a certificate.
> So, you know, at some point in time, depending on how this thing shakes out, I mean, if my client loses this case because McElroy and Bradco lied to these people, okay, then I'm going to go after them. All right. So I don't want—I'd like to have the award specified to the extent that you are willing to, or able to, based on the evidence that if this damage has been incurred by the respondents because of Coastal, that that was a function of this failure, whatever it might be.
> It might be the failure to put the sealant underneath the roof panels. So at least I've got a finding. Okay? And then I can shake out with them later on, was it our role to put sealant under or theirs. That's sort of—you got any objection to that?
>
> **MR. SYMON** [counsel for Mr. Anthony and Broadband]: I don't, but what I'd like to see, this case has been pending for a long time and my client's out a lot of money. I would like to see an award followed by reasoned decision, if that's acceptable. I would not have a problem, I just don't want to wait for it.
>
> **THE ARBITRATOR**: You wouldn't wait. If I decide to give a reasoned award, it's not going to take me any longer.
>
> **MR. SYMON**: Okay. Then that's—I don't have any objection.
>
> **MR. BUNDY**: Good.
>
> **THE ARBITRATOR**: I'm not—I'm not making any promises to you that I will.
>
> **MR. BUNDY**: Oh, I understand.
>
> **THE ARBITRATOR**: What I will tell you—this is—I don't remember, but this is convened under construction industry rules, right, not commercial rules?
>
> **MR. SYMON**: Sure.

> **THE ARBITRATOR**: So you've got a right to a breakdown anyway.
>
> **MR. BUNDY**: Right.
>
> **THE ARBITRATOR**: So that leads me to this. When we're—by the time we're done, I would like you all to give me, on the last day of hearing, or sooner, if you want, what you think the award should look like. If you want, you can give me the—you know, your—
>
> **MR. BUNDY**: The reason—
>
> **THE ARBITRATOR**: If you want, but I don't need that. But what I do need is to know what kind of breakdown you want. Yours is probably in your brief, but you may need more detail. I don't know. I'd leave that to you.
>
> **MR. SYMON**: I just need a number.
>
> **THE ARBITRATOR**: Okay. But your—under the construction rules, you are entitled to a breakdown. I'll certainly do that at a minimum. Whether I go beyond that, I can't —I don't know yet.
>
> **MR. SYMON**: I understand. I understand.
>
> **THE ARBITRATOR**: Because I tend not to do reasoned awards unless I have to or unless there's some really good reason to, and I hear what you're articulating, so I'll keep that in mind.
>
> **MR. SYMON**: Thank you.

(*Id.* Ex. 2, Transcript 38:1–41:5.) Lastly, Plaintiff cites to a Ninth Circuit case for the proposition that an arbitrator exceeds his authority by failing to provide a written explanation of the award when the parties contracted for it. (*Id.* at 7) (citing *Western Employees Ins. Co. v. Jefferies & Co., Inc.*, 958 F.2d 258 (9t h Cir. 1992) ("However, arbitrators can also 'exceed their powers' under 9 U.S.C. § 10(d) when they fail to meet *their* obligations, as specified in a given contract, to the parties.") (emphasis in original)).

Mr. Anthony and Broadband contend that the arbitrator was never under an obligation to provide a reasoned award. They argue that former Rule 43 required the parties to request a

7

reasoned award in writing prior to the appointment of the arbitrator and that Coastal has failed to produce any evidence that the parties entered into such an agreement prior to selecting the original arbitrator in this case. Next, Mr. Anthony and Broadband contend that the hearing transcript reveals that they never requested a reasoned award, as their lawyer merely clarified that he "just need[ed] a number." Lastly, they contend that the court should not rely on the Ninth Circuit case cited by Coastal as authority to vacate the arbitrator's award for failure to provide a written explanation of his award, assuming the parties properly requested one. Unlike the arbitration provision invoked in this case, Mr. Anthony and Broadband point out that the parties in the Ninth Circuit case altered their arbitration agreement to add a provision requiring the "arbitrators to accompany any award with a statement of their findings of fact and conclusions of law." *W. Emplrs Ins. Co. v. Jefferies & Co.*, 958 F.2d 258, 259 (9th Cir. 1992). Since Coastal and Broadband merely contracted to arbitrate their disputes "in accordance with the most current Construction Industry Arbitration Rules of the American Arbitration Association," Mr. Anthony and Broadband contend that the case proves irrelevant to the disposition of this case.

After considering each side's argument, the court finds that the arbitrator was not obligated to provide a reasoned award as argued by Coastal. As already discussed, the version of Rule 43 of the Construction Industry Arbitration Rules applicable to the parties' dispute provided, "The arbitrator shall provide a concise, written breakdown of the award. If requested ***in writing by all parties prior to the appointment of the arbitrator***, or if the arbitrator believes it is appropriate to do so, the arbitrator shall provide a written explanation of the award." (emphasis added). Coastal has not provided any evidence that both parties to the arbitration requested, in writing and prior to selecting the arbitrator, an explanation of the award. Aware of the technical nature of this finding, the court notes that the revised Construction Industry Arbitration Rules,

8

made effective October 1, 2009, allows the parties to request a reasoned award up until the conclusion of the first Preliminary Management Hearing. Current Rule 44 provides:

> **Rule 44. Form of Award**
>
> . . . .
>
> (c) The parties may request a specific form of award, including a reasoned opinion, an abbreviated opinion, findings of fact or conclusions of law[,] *no later than the conclusion of the first Preliminary Management Hearing*. If the parties agree on a form of award other than that specified in R-44 (b) of these Rules the arbitrator shall provide the form of award agreed upon. If the parties disagree with respect to the form of the award, the arbitrator shall determine the form of award.

Thus, the rule was revised to provide the parties with additional time to agree upon the form of the arbitrator's award. In this case, however, the rule required that the parties request a reasoned award *in writing* and *prior to the selection of the arbitrator*, but it was not until a conference call, which resulted in the Report of Preliminary Hearing, Scheduling Order and Procedural Directive #2, that the parties requested a reasoned award and that the original arbitrator[1] memorialized the fact that a reasoned award was requested.

Coastal, however, does call attention to Rule 1 of the Construction Industry Arbitration Rules, which permits the parties to modify the procedures set forth in the rules after the appointment of an arbitrator, so long as the arbitrator consents to the modification. Even if the court accepted Coastal's position that the original arbitrator appointed to the case actually agreed to issue a reasoned award by noting in his Directive #2 that "a reasoned award was requested," the question becomes whether or not that consent can bind the later-appointed arbitrator who actually heard the case and determined the award. Coastal contends that "the third arbitrator was not at liberty under the AAA rules to abandon the procedural decision at his whim," but it has not offered any authority to support this argument. The transcript of the hearing makes it clear

---

[1] The original arbitrator removed himself from the case when a conflict of interest arose. A second arbitrator was appointed, but also withdrew at a later date. Then, the final arbitrator, who heard the case and issued the award, was appointed.

9

that the arbitrator who actually heard the case did not consent to provide a reasoned award, as he was "not making any promises" that he would issue one, but would only keep the request "in mind." And instead of arguing to the arbitrator that he had such an obligation because the parties has already so requested, as it argues now, Coastal's counsel simply stated that he "understood" the arbitrator's undecided position. Although Coastal believes that "the arbitrator's refusal to commit to providing a reasoned decision cannot have the effect of altering with no prior warning the agreed upon procedures set out by the parties and agreed to by the [original] arbitrator . . . ," Coastal did not take this position at the hearing.

Also, as Mr. Anthony and Broadband argued, the parties' arbitration provision in this case did not require the arbitrator to produce a reasoned award like the contract provision at issue in the Ninth Circuit case cited by Coastal. In that case, the parties' arbitration provision specifically stated that an arbitrator's award would contain "findings of fact and conclusions of law," thus the court found that the arbitration panel exceeded its authority under § 10 when its award did not contain findings of fact and conclusions of law, as the award failed to meet the obligations specified under the parties' contract. *W. Emplrs Ins. Co.*, 958 F.2d at 262. Here, the parties merely agreed that if mediation did not resolve a dispute between them, then the matter was to be "decided by arbitration in accordance with the most current Construction Industry Arbitration Rules of the American Arbitration Association." (Broadband's Mem. in Support Ex. E.) Of course, the arbitration rule applicable to this case permitted arbitrators to provide reasoned awards, "if the arbitrator believes it is appropriate to do so." While Coastal may have asked the arbitrator at the start of the hearing to issue a reasoned award, "courts generally have held that arbitrators are not required to give their reasons for an award . . . . Arbitrators are not required to disclose the basis upon which the awards are made and courts will not look behind a lump-sum

award in an attempt to analyze their reasoning process." *Atlanta-Tomberlin, Inc. v. E. Band of Cherokee Indians*, 672 F. Supp. 887, 889 (W.D.N.C. 1987).

Finally, even if the court were to find that the arbitrator was required to issue a reasoned award, courts have not recognized a failure to do so as a ground for vacating an arbitrator's award. In *MCI Constructors, Inc. v. Hazen and Sawyer, P.C.*, the plaintiff asked the court to vacate an arbitrator's damages award under § 10(a)(4) because the arbitration panel did not provide a reasoned award. No. 1:02-396, 2009 U.S. Dist. LEXIS 17866, at *27 (M.D.N.C. March 9, 2009). In rejecting the plaintiff's request, the court noted that "[a]n award being unreasoned is not a basis for vacatur under § 10(a)(4)," as "awards are generally vacated under § 10(a)(4) only where the arbitrators failed to resolve an issue presented to them or the award is ambiguous or unclear. *Id.* (citation omitted). Thus, based on the foregoing, the court rejects Coastal's request for vacatur based on an unreasoned award.

b) **Manifest Disregard of the Law**

Plaintiff also asks the court to vacate the arbitration award based on the arbitrator's alleged "manifest disregard of the law."[2] Specifically, Coastal believes the arbitrator manifestly disregarded South Carolina law by concluding that The Broadband Companies, LLC was the

---

[2] Although Plaintiff characterizes this argument as one made pursuant to § 10(a)(4), the Fourth Circuit has recognized "manifest disregard of the law" as a non-statutory basis for vacating an arbitration award. *Upshur Coals Corp. v. United Mine Workers of Am. Dist. 31*, 933 F.2d 225, 229 (4th Cir. 1991). Plaintiff may have elected to frame its argument this way because of the uncertainty surrounding the validity of non-statutory grounds for vacating arbitrator's awards. In *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 128 S.Ct. 1396, 1403 (2008), the Supreme Court recently held that "§§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification [of arbitration awards]." The *Hall Street* Court did not, however, determine whether common law grounds for vacatur, including "manifest disregard" and "essence of the agreement," are permissible bases for vacatur independent of, or as a shorthand for, the grounds for vacating awards that are specified in the FAA. *Id.* at 1404, 1406 ("parties wanting review of arbitration awards . . . may contemplate enforcement under state statutory law or common law . . . . [H]ere we speak only to the scope of expeditious judicial review under §§ 9, 10, and 11 [of the FAA], deciding nothing about other possible avenues of judicial enforcement of arbitration awards." (emphasis added)). Therefore, the court conducts its analysis assuming, without deciding, that it could vacate the award because of the arbitrator's "manifest disregard of the law."

successor in interest to Broadband Construction Services, LLC. Coastal contends that Broadband Construction was dissolved by its sole owner, Mr. Anthony, on December 31, 2006, and that Mr. Anthony filed the articles of termination with the Secretary of State on April 9, 2007. Although Mr. Anthony intended to merge Broadband Construction into Broadband Companies, Coastal contends he never completed the merger by filing a merger plan with the South Carolina Secretary of State, which Coastal argues is necessary for any attempt at a merger to be effective under South Carolina law. Coastal argues that since the merger was ineffective, Broadband Companies did not become the successor in interest of Broadband Construction's cause of actions against it and, accordingly, lacks standing to bring its claims. Mr. Anthony and Broadband contend that the arbitrator correctly found that Broadband Companies is the successor in interest of Broadband Construction. They also contend that, regardless of the merits of the dispute, the court's review of an arbitrator's award is narrow, so much that even a legal mistake, which they do not believe the arbitrator made, does not permit the court to find that an arbitrator manifestly disregarded the law. Regarding this ground of vacatur, the Fourth Circuit has stated:

> [A]n award may be overturned if it flowed from an arbitrator's manifest disregard of the applicable law. *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 (4th Cir. 1998). In order to secure judicial relief on such grounds, it must be shown that the arbitrator, in making his ruling, was 'aware of the law, understood it correctly, found it applicable to the case before [him], and yet chose to ignore it in propounding [his] decision.' *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 149 (4th Cir. 1994). As one of our sister circuits has explained, an arbitrator does not act in manifest disregard of the law unless: '(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrator refused to heed that legal principle.' *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995).

*Long John Silver's Rests., Inc. v. Cole*, 514 F.3d 345, 349–50 (4th Cir. 2008) (internal alterations omitted).

After considering the record, the court does not find that the arbitrator manifestly disregarded the law in this case. "As long as the arbitrator is even arguably . . . acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *PPG Indus. v. Int'l Chem. Workers Union Council of the United Food and Commercial Workers*, 587 F.3d 648 (4th Cir. 2009) (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). Here, the arbitrator heard arguments from both sides regarding the issue of whether or not The Broadband Companies, LLC was the successor in interest to Broadband Construction Services, LLC's claims against Coastal, and in his award, he found that it was. On this record, the court finds the arbitrator "did his job." *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996).

Even considering the lack of rationale provided by the arbitrator in his award, as Coastal asks the court to do, the court does not believe the arbitrator manifestly disregarded the law. *See Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 390 (2d Cir. 2003) ("Even where explanation for an award is deficient or non-existent, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case."). Again, "a federal court cannot vacate an arbitral award merely because it is convinced that the [arbitrator] made the wrong call on the law. On the contrary, the award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." *Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004) (internal quotation omitted). Although Coastal argues that no evidence "of any kind" exists that would cause the arbitrator to find that Broadband Companies, LLC was the successor in interest of Broadband Construction Services, LLC, it appears that Broadband did provide a copy of a resolution of Broadband Companies dated September 21, 2006, which appointed Mr. Anthony to terminate Broadband

Construction, along with two other limited liability companies, and to "merge any business they may have with [Broadband Companies'] business . . . ." Therefore, there was evidence before the arbitrator that Broadband Companies was to be the successor in interest to Broadband Construction Services, LLC, and the arbitrator so found, despite the fact that Broadband did not provide proof that a merger plan was filed with the South Carolina Secretary of State. As "[t]he decision of the arbitrator on matters agreed to be submitted to him is given considerable deference by the courts," the court denies Coastal's motion to vacate his award on this ground. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 456 (2003).

    c) **Validity of Arbitration Agreement**

Finally, Coastal argues in both its motion to vacate and in its response in opposition to Mr. Anthony and Broadband's motion to confirm that, based on testimony given at the arbitration hearing, its agreement with Broadband was procured by fraud, and its enforcement would be contrary to public policy. As such, Coastal argues that the contract between the parties is void and that the court should now find that the parties were not required to arbitrate. Coastal bases this argument on the assertion that Mr. Anthony, the owner of all of the Broadband entities, testified during the arbitration hearing that the Broadband entities never had a contract with P. Browne & Associates, the general contractor, to perform roofing work at the Charleston Weapons Station. Coastal contends that Broadband Construction represented that it had a subcontract with P. Browne & Associates to perform roofing work, which Coastal relied on when deciding to enter into its contract with Broadband Construction, but had it known that a contract did not exist between those entities, it never would have entered into its contract with Broadband.

Moreover, Coastal contends that P. Browne & Associates and Broadband violated federal law. It asserts that, as a recipient of a subcontract from the Small Business Administration special 8(a) program, P. Browne & Associates was required to perform twenty-five percent of the work on the roofing project and could not have subcontracted all of the work to Broadband, as a third party, without the government's approval. Coastal alleges that the government never approved Broadband's participation in its contract with P. Browne & Associates and that P. Browne & Associates and Broadband were able to conceal Broadband's involvement in the project by executing an assignment of claims. As such, Coastal believes Broadband must have made deliberate misrepresentations to the Navy for Coastal to have access to the Charleston Weapons Station to conduct the work it did, and since its contract with Broadband Construction was allegedly procured by fraud, its enforcement would be against public policy.

Mr. Anthony and Broadband contend that the evidence supports the arbitrator's finding that a subcontract existed between P. Browne & Associates and Broadband Construction and believe the court lacks subject matter jurisdiction to hear this claim, as the law requires an arbitrator to judge a contract's validity, compared to the validity of an arbitration clause, which the court can review. The court agrees with this argument. As already explained in this court's previous order, the United States Supreme Court has determined that when a party challenges the agreement, rather than the arbitration provision, "[t]he challenge should . . . be considered by an arbitrator, not a court. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006). Inherent in the arbitrator's award is his finding that Coastal and Broadband Construction entered into a valid contract, and to the extent Coastal would argue that the arbitrator manifestly disregarded the law by making this finding, the court does not make such a finding.

Paul Browne, owner of P. Browne & Associates, testified during his deposition that he drafted a subcontract document which was executed with Broadband. Although a signed copy was never introduced into evidence because, according to Mr. Browne, a fire at his home destroyed the document, the arbitrator admitted, over objection, an unexecuted copy of the alleged agreement during the arbitration hearing. Mr. Anthony also testified that Broadband Construction had a standard subcontract agreement with Mr. Browne's company. While Coastal contends that Mr. Anthony did not reveal until the last day of the arbitration hearing that a subcontract was never signed by both his company and Mr. Browne's company, Mr. Anthony testified in his deposition on March 26, 2009 that the parties "never signed the subcontract agreement because the numbers continued to change." (Anthony Dep. 32:7–8.) Coastal believes this testimony proves that P. Browne & Associates and Broadband Construction never reached an agreement as to the scope of the work and the price to be paid, and thus never had a valid contract.

Before the arbitrator, however, was more than just the unexecuted copy of the subcontract agreement between P. Browne & Associates Broadband. According to Mr. Anthony and Broadband, the evidence also consisted of a signed Teaming Agreement, dated August 30, 2006, and a Letter of Understanding from Mr. Anthony to Mr. Browne, dated August 30, 2006, which respectively memorialized the terms of the parties' arrangement and listed the scope of Broadband's performance. Based on this evidence, the arbitrator could have concluded that a valid contract existed between all of the parties involved with this project, and simply because Broadband failed to produce a signed copy of its subcontract agreement with P. Browne & Associates does not necessarily mean the two parties did not enter into an enforceable contract or that Coastal was fraudulently induced into entering into its contract with Broadband.

Additionally, the court declines to vacate the arbitrator's award based on Coastal's public policy argument. Coastal dismissed its argument that P. Browne & Associates violated the regulations of the 8(a) subcontractor program with prejudice at the arbitration hearing, and it is uncertain that Coastal has standing to assert such a claim. Accordingly, the court does not find that no justifiable ground for the arbitrator's decision can be inferred from the facts of this case, and it denies Coastal's motion to vacate based on a fraudulent procurement theory.

## II. Mr. Anthony and Broadband's Motion to Confirm Arbitrator's Award

Section 9 of the Federal Arbitration Act provides that any time within one year after an arbitration award is made, a party to the arbitration may apply to a federal district court for an order confirming the award. 9 U.S.C. § 9. As already discussed, the federal court's review of an arbitration award is tightly circumscribed, *see, e.g.*, *Union Pac. R.R. v. Sheehan*, 439 U.S. 89, 91 (1978) (per curiam) (stating that the scope of review of arbitration award is "among the narrowest known to the law" (internal quotation marks omitted)); *Upshur Coals Corp. v. United Mine Workers of America*, 933 F.2d 225, 229 (4th Cir. 1991) (noting that arbitration awards are "accorded great deference"), and a court must confirm the arbitration award unless the award is vacated, modified, or corrected pursuant to sections 10 or 11 of the FAA. 9 U.S.C. § 9. The court has denied Coastal's motion to vacate on the various grounds asserted; therefore, the court grants Mr. Anthony and Broadband's motion to lift the court's stay and confirm the arbitration award.

## CONCLUSION

It is therefore, **ORDERED**, for the foregoing reasons, that Defendants Fred Anthony and The Broadband Companies, LLC's motion to lift stay and confirm arbitration award is **GRANTED** and that Plaintiff Coastal Roofing Company, Inc.'s motion to vacate is **DENIED**. It is also **ORDERED** that the total award received by Defendants shall bear post-judgment interest at the legal rate.

**AND IT IS SO ORDERED**.

_____
PATRICK MICHAEL DUFFY
United States District Judge

**January 22, 2010**
**Charleston, SC**